**WANG CHIUN-MING, also known as James Y. Wang, or James Yee Wang, Plaintiff,**

v.

**Edward J. SHAUGHNESSY, District Director of the Third District of the Immigration and Naturalization Service at the Port of New York, Defendant.**

United States District Court
S. D. New York.
Nov. 30, 1955.

Saram Amerling, New York City, for plaintiff.

Paul W. Williams, U. S. Atty. for Southern District of New York, New York City, Harold J. Raby, Asst. U. S. Atty., New York City, Roy Babitt, Attorney for Immigration and Naturalization Service, New York City, of counsel, for defendant.

SUGARMAN, District Judge.

Plaintiff's complaint alleged *inter alia* that defendant, as District Director of Immigration and Naturalization on April 11, 1955, caused plaintiff to be apprehended on a warrant charging that he, after admission to the United States as a student, failed to comply with the conditions of such status; that plaintiff is a Chinese citizen born in Japan in 1923 where he resided until 1930 and thereafter resided in China until 1949 when he entered the United States; that plaintiff was released on administrative bond on May 6, 1955, after a hearing on April 12, 13, 14 and 25, 1955, before a special inquiry officer resulting in an order for deportation, the appeal from which was dismissed by the Board of Immigration Appeals on July 5, 1955. The complaint seeks *inter alia* a declaration of the illegality of the deportation order and injunctive relief.

Plaintiff now moves for an injunction *pendente lite*.

Defendant, before answering the complaint, cross moves under Fed.Rules Civ. Proc. rule 56, 28 U.S.C.A., for summary judgment dismissing the complaint on the ground that no genuine issue as to any material fact exists and defendant is entitled to judgment as a matter of law.

Plaintiff entered the United States on January 24, 1949, at San Francisco and was admitted under Section 4(e)* of the Immigration Act of 1924, 43 Stat. 153, for a temporary period ending January 24, 1950. His application to extend time of stay as a non-quota student was granted to January 23, 1951. A second such

* Immigration and Nationality Act 1952, 8 U.S.C.A. § 1101(a) (15) (F).

application (Exhibit 4 in the hearing record) was filed by plaintiff but never acted upon by the government.

On April 8, 1955, a warrant of arrest was issued for plaintiff's apprehension on the ground that "after admission to the United States as a student, he failed to comply with the conditions of such status".[1]

After a hearing, the special inquiry officer found that the charge was sustained on two bases, namely (a) that plaintiff had remained in the United States beyond the permitted time and (b) that plaintiff did in the winter of 1952 engage in gainful employment in the United States without permission of the Immigration and Naturalization Service. He then ordered that plaintiff be deported from the United States, an application for voluntary departure having been made and withdrawn during the hearing.

On appeal, the Board of Immigration Appeals affirmed the decision on the second alleged basis, viz., "the alien * * * accepted gainful employment in the winter of 1952 without permission from the Immigration and Naturalization Service".

 Presumably, the Board of Immigration Appeals in the exercise of "such discretion and authority as is appropriate and necessary for the disposition of the case"[2] reversed sub silentio so much of the decision of the special inquiry officer as purported to sustain the deportation on the ground that the alien remained in the United States beyond January 23, 1951, the expiration date of his first extension of time of stay, and that he therefore failed to comply with the conditions of such status. This presumption is supported by the absence from the hearing record of any evidence on which the special inquiry officer could have found that plaintiff had thus remained in this country beyond the permitted

time. Plaintiff's timely filing of an application for an extension beyond January 23, 1951, was established. The only matter tending to show that the application was denied is found in the following colloquy (hearing SM 15–16) [bracketed portions supplied]:

"Special Inquiry Officer [Mr. Kanzler] to Counsel:

"Q. Mr. Amerling, [plaintiff's attorney] do you wish to examine the respondent [plaintiff] on the issue of deportability or do you have any evidence that you would like to present? A. I do.

"I wonder if I may ask Mr. Schiano [Examining Officer] at this point if there is any other record of disposition of the other application which has been identified as Exhibit 4 [plaintiff's last application for extension, not acted upon by the government] today?

"Examining Officer to Counsel:

"Q. Are you referring to the last application? A. Yes,—the last application.

"Q. There is no communication or copy of communication stating that that application was granted, if it were, Mr. Wang would be in possession of the original of that grant. A. No, I didn't see—

"Q. (Interposing) His passport and his visitor's permit would have been stamped appropriately as to that. A. No, what I asked was does your file have any record of the disposition which was made, not whether there was any communication received or sent,—but how was that application disposed of, what was taken on it?

"Q. Do you mean independent of whatever knowledge Mr. Wang may have of it? A. Yes.

"Q. I have only informal knowledge that that application was not

1. The proceeding having been commenced subsequent to the effective date, December 24, 1952, of the Immigration and Nationality Act, Ch. 477, 66 Stat. 163,

it was properly conducted thereunder. 8 U.S.C.A. § 1251(a) (9).

2. 8 C.F.R. 6.1d (Revised 1952).

extended. A. Was any affirmative action taken on it?

"Q. I don't know what you mean. A. I presume—at the filing of that application it was accompanied by a fee, it was a regular application made in due course,—right?

"Q. There was no fee attached to that application at that time. A. No fee was needed,—oh, I didn't understand that.

"Q. I have informal knowledge, only second-hand knowledge,—that Mr. Wang appeared at the office and was advised that no further extensions would be granted to him."

This is not the "reasonable, substantial, and probative evidence"[3] of the absence of permission to remain required even under the standards applicable to administrative agencies. Further, in defense to this branch of the charge, plaintiff testified (hearing SM 16):

"Counsel to Respondent:

"Q. Mr. Wang, you have identified and there has been marked as Exhibit 4 in the record today, an application for further extension of your temporary stay that was made by you on January 8, 1951. A. Yes.

"Q. And which is stamped with a 'Received' in the Travel Control Unit on January 17, 1951. Did you ever receive any advice from the Immigration and Naturalization Service as to what action they took on that application or as to any action? A. No, I have not received any.

"Q. Neither written advice? A. Except that it was mentioned in passing during my interview here in June of 1951 with Mr. Hurwitz, If I remember the date right, that no action had been taken yet on my application and I would have to wait.".

The regulation pertinent to this branch of the charge applicable to the alien at the time of the alleged violation (January 23, 1951) is found in 8 C.F.R. § 125.13 (1949 edition).

This regulation in part provides:

"§ 125.13 *Extension of stay; procedure.* (a) A student may apply for an extension of the period of his temporary admission * * * (b) After making such inquiry as may be necessary, the district director shall make a decision on the application and such decision shall be final. * * * *In all cases the district director shall send notice of the decision to the student.*" (Emphasis supplied.)

No time limit is imposed on the district director and for aught that was before the special inquiry officer, the application for extension was still pending undetermined at the time of the deportation hearing.

Turning to the second branch of the charge, i.e.—that plaintiff did in the winter of 1952 engage in gainful employment in the United States without permission of the Immigration and Naturalization Service—the Board of Immigration Appeals dismissed the appeal in the following language:

"Deportability is predicated on the failure of the respondent to maintain the student status in that he did not comply with the terms and conditions of his admission as a student. He has testified that he has his Bachelor of Arts Degree and has been working toward the Doctor of Philosopher [sic] Degree. He admits, that from 1950 or 1951 to 1953, he did not pursue the full school course required because he did not like the course of study at Columbia University (pp. 18, 20 and 23). He admits that in the winter of 1952 he accepted gainful employment, without permission from the Immigration and Naturalization Service, and worked for a period of two weeks (pp. 26 and 27). His testimony in this regard is as follows:

"Q. Do you have any funds—do you receive any funds or income from relatives or the Government or anyone? A. Right now I am

3. 8 U.S.C.A. § 1252(b) (4).

supporting myself by working as a student assistant for the School of Architecture.

"Q. When did you first become employed in the United States? A. Only regarding the long-term employment rather—then [sic] summertime?

"Q. All. A. The first time I got employed was with the Railway Express Company of New York City for two weeks.

"Q. When was this? A. During the winter vacation of 1952.

"Q. When was the next time you became employed? A. The next time I became employed was summer jobs of various and miscellaneous character.

"Q. Where? Where, Mr. Wang? A. In Wyoming.

"Q. In Wyoming? A. Yes, in Wyoming last summer—with permission.

"Q. (Interposing) of the school? A. Yes, which she was authorized to grant.

"Q. You worked for two weeks in the winter of 1952? A. That's right.

"Q. Did you work in 1953? A. Yes, from September of 1953 on up to the present, I have been regularly and fully employed as a student assistant to the Dean of the School of Architecture.

"Q. That is at Columbia University? A. Yes.

"Q. What is your pay there? A. My pay there is $41.00 or roughly so, a week.

"It is our opinion that deportability is clearly established by the testimony of the alien, quoted above, *which shows that he accepted gain-ful employment in the winter of 1952 without permission from the Immigration and Naturalization Service.* The failure of the respondent to comply with the terms of his admission as a student places him within the class of aliens subject to deportation (8 CFR 125.5). It follows that the charge in the warrant of arrest is sustained." (Emphasis supplied.)

From the foregoing it is manifest that deportability was sustained on the sole ground that plaintiff "accepted gainful employment *in the winter of 1952* without permission from the Immigration and Naturalization Service". Although, as above stated (note 1, supra) the Immigration and Nationality Act applied to this proceeding, it is not quite so simple to determine whether the Regulations of the Department of Justice effective simultaneously with the Act [4] (December 24, 1952) or those previously in force as to students [5] govern, because the record does not disclose *when*, in the winter [6] of 1952 the alleged unauthorized employment occurred. By the citation "8 CFR 125.5" in the Board's decision, the earlier regulations [7] were obviously applied and hence the decision will be tested thereupon.

Deportation under those regulations, in a case such as this, might be had of "a student who violates or fails to fulfill *any of the conditions of his admission * * ***".[8] The "conditions of admission" set forth in those regulations [9] do not contain any restriction against employment. The separate regulation governing "employment"[10] after the student is here, is not one of the "conditions of his admission".

But even if the acceptance of employment without the requisite permission be deemed a basis for deportation, it still

4. 8 CFR (1952 ed.) 17 Fed.Reg. 11469.

5. 8 CFR (1949 ed.) 12 Fed.Reg. 5355.

6. "Astronomically, north of the equator, it may be considered to last from the winter solstice, about December 21st, till the vernal equinox, about March 21st".

Webster's New International Dictionary, 2d Ed.

7. 8 CFR (1949 ed.), 12 Fed.Reg. 5355.

8. 8 CFR (1949 ed.), § 125.5.

9. 8 CFR (1949 ed.) § 125.3.

10. 8 CFR (1949 ed.) § 125.15.

must be established (a) that employment was accepted and (b) that permission therefor was not obtained.

The government's burden is to establish deportability "upon reasonable, substantial, and probative evidence".[11] The appropriate extract from the hearing record set forth above in the quotation from the Board's decision establishes by his own admission that Wang was employed in the winter *vacation* of 1952[12] but fails to establish that such employment was without permission of the District Director. Such material fact may not be assumed.

In the absence of such proof the plaintiff's motion for a preliminary injunction must be granted and defendant's cross-motion for summary judgment must be denied.

Settle order on notice.

---

11. 8 U.S.C.A. § 1252(b) (4).

12. There is doubt that even this violated the "employment" regulation (8 CFR (1949 ed.) § 125.15) which speaks of employment "during a school term" but it is assumed that it did.